UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| A.B., *by and through his parents and natural guardians Z. Jill Barclift and Adolph Barclift*,<br><br>Plaintiffs,<br><br>v.<br><br><br>Westonka Independent School District 277,<br><br>Defendant. | Case No. 14-cv-00466 (MJD/HB)<br><br><br><br>**REPORT AND RECOMMENDATION** |

Jason L. Schellack and Amy Dawson, Autism Advocacy & Law Center, 212 Second Street SE, Suite 220, Minneapolis, MN 55421, for Plaintiffs.

Laura Tubbs Booth and Roseann T. Schreifels, Booth & Lavorato LLC, 10520 Wayzata Boulevard, Suite 200, Minnetonka, MN 55305, for Defendant.

HILDY BOWBEER, United States Magistrate Judge

**I.   INTRODUCTION**

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [Doc. No. 15]. The motion has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends granting Defendant's motion.

## II.     BACKGROUND

The Complaint alleges the following facts which, for purposes of this motion, the Court must accept as true.  Plaintiffs A.B. and his parents, Z. Jill Barclift and Adolph Barclift, are residents of Minnetrista, Minnesota.  (Compl. ¶ 4 [Doc. No. 1].)  Defendant Westonka Independent School District 277 ("the District") is an independent school district in Mound, Minnesota.  (*Id.* ¶ 5.)  A.B. attended Westonka Public Schools from the middle of his kindergarten year in December 2008 to the end of his fourth grade year.  (*Id.* ¶¶ 12, 51.)

A.B. has diagnoses of an Autism Spectrum Disorder, Pervasive Developmental Disorder, Dyslexia, Dysgraphia, and Attention Deficit Hyperactive Disorder.  (*Id.* ¶ 10.)  In December of 2008, Mrs. Barclift requested the District to evaluate A.B. for special education services.  (*Id.* ¶ 13.)  The District determined that A.B. was eligible for special education services under the category of Autism Spectrum Disorders.  (*Id.* ¶ 15.)  In February 2012, the District performed a three-year evaluation of A.B. to determine whether A.B. continued to be eligible for special education services, finding him eligible under the category of Autism Spectrum Disorders.  (*Id.* ¶¶ 16, 17.)

Regarding A.B.'s reading skills, the District found that they were significantly below his grade level, but did not include an annual goal in A.B.'s 2012 and 2013 Individualized Education Programs ("IEP") that addressed these skills.  (*Id.* ¶¶ 20-21.)

Regarding A.B.'s math skills, the District found that they were below his grade level.  (*Id.* ¶ 24.)  Although the District included an annual goal in A.B.'s 2012 IEP that addressed math skills (*i.e.*, to solve math problems at a fourth-grade level), it did not

provide appropriate services to enable A.B. to reach this goal. (*Id.* ¶¶ 25, 27, 30.) For A.B.'s 2013 IEP, the District rewrote A.B.'s math goal with lowered expectations: to solve fourth-grade math quizzes with 70% accuracy. (*Id.* ¶¶ 28-30.)

Regarding A.B.'s handwriting legibility, the District found poor performance, but did not include an annual goal in A.B.'s 2012 and 2013 IEPs. (*Id.* ¶¶ 34, 35.)

The District's 2012 reevaluation also identified the following as individual educational needs of A.B.: appropriate interaction with classmates; interpreting the behavior and social cues of others; initiating and continuing conversations; reading gestures and body language; coping strategies for stressful, frustrating, or confusing tasks and situations; and flexibility in dealing with changed routines or schedules. (*Id.* ¶¶ 36, 38, 40, 42, 44, 46.) The District, however, did not include an annual goal in A.B.'s 2012 and 2013 IEPs that addressed any of these needs. (*Id.* ¶¶ 37, 39, 41, 43, 45, 47.) Moreover, A.B.'s educational record, which his parents requested from the school on or about October 25, 2013, contained no "observation notes," "teacher notes," and "tally sheets," even though A.B.'s IEPs stated that his progress would be tracked using those tools. (*Id.* ¶¶ 48-50.)

In September 2013, A.B. transferred to the Whole Learning School, a private school designed for students with Autism Spectrum Disorders, to begin his fifth-grade year. (*Id.* ¶¶ 51-52.) A.B.'s parents are paying out-of-pocket for his tuition at the Whole Learning School, transportation to this school, private speech and language services, and private social skills classes. (*Id.* ¶¶ 53-62.)

The Complaint alleges two counts: (1) violation of Section 504 of the Federal Rehabilitation Act (FRA); and (2) violation of the Americans with Disabilities Act (ADA).  (*Id.* ¶¶ 63-99.)  Both counts allege that the District acted with gross misjudgment because it failed "to address all A.B.'s individual educational needs in A.B.'s IEPs, despite that the District was aware of and identified these needs," and failed "to follow its own IEPs and use observation notes, teacher notes, or tally sheets to track A.B.'s progress."  (*Id.* ¶¶ 79-80, 97-98.)

## III.  DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a motion for judgment on the pleadings is appropriate after the pleadings are closed.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings will be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004).

A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint.  *Id.*  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*

### B.   Failure to Exhaust

Defendant argues that Plaintiffs' claims must be dismissed because Plaintiffs failed to exhaust their administrative remedies under the Individuals With Disabilities

Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, and that therefore this Court lacks subject matter jurisdiction to consider Plaintiffs' discrimination claims under Section 504 of the FRA and Title II of the ADA.  Plaintiffs admit that they did not exhaust their remedies under the IDEA, but urge that their federal court action should not be dismissed because pursuit of administrative remedies would be futile and/or inadequate in their situation.

Congress enacted the IDEA to ensure that children with disabilities are provided a free appropriate public education ("FAPE") that "emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected."  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009).  The main tool for implementing a FAPE is the IEP, which is a "comprehensive statement of the educational needs of [the] handicapped child and the specially designed instruction and related services to be employed to meet those needs."  *C.B. ex rel. B.B. v. Special Sch. Dist. No. 1*, 636 F.3d 981, 989 (8th Cir. 2011).

The IDEA includes safeguards intended to give the affected children, their parents, and guardians "an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education," and "an opportunity for 'an impartial due process hearing' with respect to any such complaints."  *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013).  A party aggrieved by the outcome of an IDEA due process hearing may challenge it before the state educational agency.  20 U.S.C. § 1415(g)(1).  The outcome of the administrative review hearing may *then* be disputed in a federal district court.  *Id.* § 1415(i)(2)(A).  One must exhaust the

state administrative remedies before seeking relief in federal court. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854 (8th Cir. 2000). As the Eighth Circuit has noted, adherence to the requirement that state administrative remedies be exhausted allows the agency

> to develop the record for judicial review and apply its expertise to the Plaintiffs' claims to the extent those claims are related to implementation of [the students'] IEPs, what kind of compensatory education, if any, would have been appropriate, and whether the services for which the Plaintiffs seek reimbursement are those to which [the students] are entitled under the IDEA.

*J.B.*, 721 F.3d at 594-95.

The IDEA's exhaustion requirement extends not only to claims brought directly under the IDEA, but also to claims brought under the FRA or other federal statutes if (but only to the extent that) "those claims seek relief that is also available under the IDEA." *M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008). This requirement prevents "litigants from circumventing the [IDEA's] procedural requirements by bringing a related claim under a different Federal statute." *Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696 (Ely)*, 951 F. Supp. 867, 888 (D. Minn. 1996).

Because it is uncontroverted that Plaintiffs did not exhaust their administrative remedies, the Court must consider whether: (1) the exhaustion requirement applies because the claims relate to the IEP process or seek relief that is available under the IDEA; and (2) if so, whether any exception to the exhaustion requirement applies. *See J.B.*, 721 F.3d at 594 (noting that where the plaintiffs sought relief available under the IDEA, they were required first to exhaust the IDEA's administrative remedies unless an

exception applies); *M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 519 F. Supp. 2d 995, 1000-001 (D. Minn. 2007) ("A plaintiff need not exhaust [the] IDEA's administrative procedures when pursuing a non-IDEA claim if the claim is 'wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement, and [FAPE] decisions.'").

The Court finds that even though Plaintiffs' claims are framed as violations under the FRA and ADA, they fall squarely within the IDEA's exhaustion requirement. All of the claims relate to A.B.'s IEPs and Defendant's alleged failure to provide a FAPE to A.B. Similarly, the remedies Plaintiffs seek are encompassed by the IDEA. Plaintiffs seek, *inter alia*, compensatory damages for:

- A.B.'s tuition at the Whole Learning School from fifth grade until age 21;

- Transportation to and from the Whole Learning School from fifth grade until age 21;

- A.B.'s past and future speech and language services;

- A.B.'s past and future social skills classes; and

- Attorneys' fees.

(Prayer for Relief, Compl.) The IDEA provides for relief in the form of compensatory education and attorneys' fees. *J.B.*, 721 F.3d at 593. And while compensatory damages are not available under the IDEA, "reimbursement for private educational services, to which a student is entitled under the IDEA and which should have been borne by a school district, is a form of relief available under the IDEA." *Id.* at 594. Accordingly, because Plaintiffs' claims relate to the IEP process, and because they seek relief available under

the IDEA, Plaintiffs were required to exhaust the administrative remedies of the IDEA unless an exception to the requirement applies.

There are only three exceptions to the exhaustion requirement: futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or practice of general applicability that is contrary to law.  *Id.*  Plaintiffs argue that the futility and inadequate remedy exceptions apply, because by removing A.B. from Westonka and placing him at the Whole Learning School without requesting an IDEA due process hearing, any IDEA claim before an administrative hearing officer in the Westonka district would now be moot.  Therefore, they argue, it would be futile to request such a hearing, and no adequate remedy would be forthcoming.

The Court agrees that because A.B. is no longer in the Westonka school district, Plaintiffs cannot now attempt to exhaust their administrative remedies.  *See Thompson ex rel. Buckhanon v. Bd. of the Special Sch. Dist. No. 1 (Minneapolis)*, 144 F.3d 574, 578-79 (8th Cir. 1998).  The Court disagrees, however, that this triggers the exceptions to the exhaustion requirement.  In *J.B.*, the plaintiffs argued in part that the IDEA remedies were inadequate because the Missouri statute of limitations for special education claims had expired.  721 F.3d at 595.  The Eighth Circuit rejected this argument, noting that "the expiration of the period reflects only on the individual's choice and not the adequacy of the remedy," and the plaintiffs had shown no reason for their failure to timely file an IDEA due process complaint.  *Id.*  Similarly, in the present case, Plaintiffs have not shown any reason why they could not have filed an IDEA due process complaint while A.B. was still enrolled in the District.  Just as the Eighth Circuit recognized in *J.B.,* an

8

administrative due process hearing in this case would have allowed the agency to develop the record, apply its expertise to the claims relating to the implementation of A.B.'s IEPs, identify appropriate compensatory education, and consider whether the services for which Plaintiffs now seek reimbursement are those to which A.B. is entitled under the IDEA. Plaintiffs' choice not to timely file a complaint and request a due process hearing does not render the administrative remedies under the IDEA inadequate or futile.

Because Plaintiffs' claims are subject to the exhaustion requirement and no exception applies, the Court recommends granting Defendant's motion.[1]

## IV.   RECOMMENDATION

This Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs failed to exhaust their administrative remedies under the IDEA. Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion for Judgment on the Pleadings [Doc. No. 15] be **GRANTED**, and

2. This case be **DISMISSED WITH PREJUDICE**.

Dated: October 31, 2014            s/ *Hildy Bowbeer*
                                   HILDY BOWBEER
                                   United States Magistrate Judge

---

[1] Sister courts have observed that exhaustion under the IDEA is "a question of subject matter jurisdiction, and that the question goes directly to the power of a court to hear the case." *See R.N. ex rel. Nevill v. Cape Girardeau 63 Sch. Dist.*, 858 F. Supp. 2d 1025, 1029 (E.D. Mo. 2012). Because the Court recommends dismissing Plaintiffs' claims based on their failure to exhaust administrative remedies, it does not reach the parties' remaining arguments for lack of jurisdiction.

## NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 14, 2014**, a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a *de novo* determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.